UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MADELINE GORIE, individually and on behalf of all others similarly situated, | ) Case No. 1:20-CV-01387 ) ) |
| Plaintiff, | ) Judge J. Philip Calabrese ) ) Magistrate Judge David A. Ruiz |
| v. | ) ) ) |
| AMAZON.COM SERVICES, LLC, | ) ) |
| Defendant. | ) ) ) |

## OPINION AND ORDER

Plaintiff Madeline Gorie brings this suit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. She moves for conditional class certification under the Act. (ECF No. 33.) Defendant Amazon.com Services, LLC opposes the motion (ECF No. 37), and the parties have fully briefed the matter. For the reasons explained below, the Court **DENIES** Plaintiff's motion for conditional certification.

## STATEMENT OF FACTS

Plaintiff Madeline Gorie worked at one of Amazon's fulfillment centers, located in North Randall, Ohio, as a non-exempt warehouse worker from August 2019 to February 2020. (ECF No. 33-2, PageID #225.)

### A. Alleged Violations of the Fair Labor Standards Act

Plaintiff alleges Defendant violated the Fair Labor Standards Act by not providing bona fide meal periods during which she and other similarly situated Ohio

warehouse workers were relieved from duty. (ECF No. 1, ¶ 20, PageID #3.) She alleges that during the unpaid 30-minute meal period, Defendant required her and other warehouse workers to walk five to eight minutes from the warehouse floor to the breakroom, go through a mandatory pre-lunch security screening process to leave the warehouse floor, and then walk another five to eight minutes to return to the warehouse floor by the end of the meal period. (*Id.*, ¶ 23–25, PageID #4.) Further, Plaintiff alleges there were long lines to go through the security screening areas and that, as a result, the process took several minutes. (*Id.*, ¶ 26–28, PageID #4.) In sum, Plaintiff alleges that she and other warehouse workers "routinely only received a 10 to 15-minute meal period" and not the full 30 minutes of unpaid time. (*Id.*, ¶ 31, PageID #5.) According to Plaintiff, these violations resulted in Defendants' failure to pay employees overtime when they worked more than 40 hours in a workweek. Based on these allegations, Plaintiff claims Defendant violated the Fair Labor Standards Act.

### B. Collective Action Allegations

Plaintiff brings these claims on behalf of herself and other similarly situated Ohio warehouse workers Amazon employs in Ohio. Following certification, Plaintiff requests that the Court implement notice and opt-in procedures. (ECF No. 33, PageID #221.) Plaintiff estimates the class consists of at least several thousand persons. (ECF No. 1, ¶ 37, PageID #6.)

#### B.1. Definition for the Collective Action

The complaint seeks conditional certification of the following collective: "All former and current hourly, non-exempt Ohio Warehouse Workers employed by

Defendant who went through security screenings during 30-minute unpaid meal periods at any period of time between June 24, 2017 and the present." (*Id.*, ¶ 37, PageID #6.) Plaintiff asserts that the defined class is similarly situated to her because the alleged members were not paid "for meal periods during which they performed work." (*Id.*, ¶ 42, PageID #7.) Further, they were not paid overtime compensation at the rate of one and a half times their hourly rate when they worked more than 40 hours each workweek. (*Id.*, ¶ 43.)

### B.2. Plaintiff's Evidence

To support her motion for conditional certification, Plaintiff submitted her own declaration plus the declarations of forty other employees. Plaintiff declares that she was a "non-exempt warehouse worker" and that she was not paid for work performed during her 30-minute meal period, which was "automatically deducted . . . from [her] pay each day." (ECF No. 33–2, ¶¶ 1, 4, PageID #226.) She declares that it took "substantial time" to walk to and from the breakrooms and to go through the pre-lunch security screening, and "[a]s a result, [she] usually only had between 10 and 20 minutes to take [her] meal periods." (*Id.*, ¶ 13, PageID #226.)

The declarations of the other forty employees are virtually identical, differing only in the dates and locations of employment. (*See generally* ECF No. 33-3.) They mirror Plaintiff's declaration in that they claim Defendant "automatically deducted 30 minutes" for a meal period despite the "substantial time" it took to walk between the work areas and the breakrooms and to go through the pre-lunch security screening, which resulted in a meal period of only "between 10 and 20 minutes." (*See, e.g.*, ECF No.33-3, ¶¶ 5, 6, PageID #229.)

3

### B.3. Defendant's Evidence

Defendant submitted several declarations in connection with its opposition to conditional certification. Alexsis Stephens, a Human Resources Director for Defendant, declares that Defendant does not require employees to go through security screening during their unpaid meal breaks. (ECF No. 37-2, ¶ 3, PageID #319.) According to Stephens, employees may choose whether to go through security screening or, alternatively, to eat inside the secured area in an internal breakroom. (*Id.*) Further, Ms. Stephens declares that Defendant does not automatically deduct 30 minutes for unpaid meal breaks. (*Id.*, ¶ 5.) Rather, written policy requires all non-exempt, hourly employees to punch in and out for their unpaid meal breaks, where the unpaid time is based on their punches. (*Id.*, ¶ 6.)

Defendant's remaining declarations come from thirteen employees. The declarations are substantially similar, though they vary based on the employee's job title and employment locations. Generally, the employees declare the following: they are free to spend their meal periods at breakrooms within the secured area, without passing through the security screening; they are allowed to bring into the secured area packed meals and money and credit cards with which to purchase food and drink items from the internal breakrooms; they are also free to spend their meal periods at breakrooms outside the secured area, or to leave the facility; when they do leave the secured area, the security screenings take no more than one minute; they use time clocks or an application on their phones to punch in and out for their meal periods; time clocks are located near to the breakrooms and to the facility exit, such

4

that all walking time to and from where they take their meal period is compensated. (*See, e.g.*, ECF No. 37-4, ¶¶ 4–9, PageID #357–58.)

Defendant also submitted excerpts of the deposition of Savon Thomas, the named plaintiff in the consolidated case *Thomas v. Amazon.com Services, Inc., et al.*, No. 1:19-cv-01696 (N.D. Ohio). (ECF No. 37-3.) Mr. Thomas testified that he punched in and out for the meal period; he had access to a breakroom inside the secured area that contained vending machines; and he occasionally spent his meal periods in the internal breakroom and purchased food items from the vending machines. (ECF No. 37-3, PageID #337–38, 342–43.)

## STATEMENT OF THE CASE

Defendant opposes Plaintiff's motion for conditional certification principally for two reasons. First, Defendant argues that Plaintiff provided no evidence that Defendant required any other alleged class member to walk to external breakrooms or undergo security screenings during meal periods. (ECF No. 37, PageID #289.) Second, Defendant claims that there is no auto-deduct policy and that, even if such a policy existed, it would not be illegal because there are mechanisms available for employees to change the length of the uncompensated meal period. (*Id.*, at PageID #289–90.)

## LEGAL STANDARD

"The Fair Labor Standards Act requires employers to pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). When employers do not comply with its requirements, the Act authorizes collective actions

5

"by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Where a court certifies a collective action, other employees who seek to join the collective class must opt into the litigation by filing a written consent with the court. *Id.*

Before a collective class may be certified, the lead plaintiffs must show "that the proposed class members are similarly situated" to them. *Fortney v. Walmart, Inc.*, No. 2:19-cv-4209, 2021 WL 221996, at *2 (S.D. Ohio Jan. 22, 2021) (quoting *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 2389721, at *2 (S.D. Ohio May 25, 2018)). Whether the plaintiff has identified similarly situated class members is determined in two phases that are governed by two different standards. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). First is conditional certification, which is conducted at the start of discovery. *Id.* Second is final certification, which is conducted after discovery concludes. *Id.* If conditional certification is granted, defendants may move for decertification after discovery. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated in part on other grounds*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160, 165–66 (2016).

This lawsuit is in the early stages, and Plaintiff seeks conditional certification. The purpose of conditional certification is "to provide notice and opportunity to opt in" to the lawsuit. *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006). At this stage of the proceedings, the plaintiff need only make "a modest factual showing" that "his position is similar, not identical, to the positions held by the

6

putative class members." *Comer*, 454 F.3d at 546–47. Conditional certification does not permit the Court to examine the merits of the case. *Barker v. Stark Cnty.*, No. 5:19CV276, 2020 WL 1288807, at *2 (N.D. Ohio Mar. 18, 2020) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)). In contrast to final certification, the standard for conditional certification is "fairly lenient . . . and typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547.

Although the Sixth Circuit has not spoken on the issue, most district courts within this Circuit "have held that plaintiff's evidence on a motion for conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b)." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 770 n.6 (N.D. Ohio 2015) (cleaned up). This is so because "[a] conditional certification action occurs at the outset of discovery, not at the close of discovery, and therefore the admissible evidence standard for summary judgment motions should not apply." *Id.* at 247 (citations omitted). Accordingly, evidence that others are similarly situated to the lead plaintiff need not be admissible at this preliminary phase. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011) (considering potential hearsay in the plaintiffs' declarations on conditional certification).

Finally, the Court must "refrain from weighing Defendants' competing evidence at this juncture" where doing so "would require credibility and factual

7

determinations improper at the conditional certification stage." *Hamm v. Southern Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 & 878 (S.D. Ohio 2017) (citations omitted); *see also Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis.").

## ANALYSIS

Plaintiff's request for conditional certification depends on whether there is sufficient evidence, at this preliminary stage, to establish that she is similarly situated to other employees. The "similarly situated" inquiry under the Fair Labor Standards Act is less stringent than the class certification requirements under Rule 23. *O'Brien*, 575 F.3d at 584–85. The Act does not define "similarly situated," but the Sixth Circuit has provided some guidance on what the term means. It holds that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. In addition, employees may be similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

### I. Failure to Pay for On-Duty Time During Meal Periods

Plaintiff claims that she and other similarly situated warehouse workers were not paid for the time during which they "were required to walk from the warehouse floor and go through a mandatory security screening process . . . before they were able

8

to eat their meals." (ECF No. 33, PageID #205.) In addition to Ms. Gorie's declaration, Plaintiff submitted the declarations of forty other warehouse workers. (ECF No. 33-3.) These declarations state that Defendant did not compensate warehouse workers for the "time it took to walk from [their] work area[s] to the break rooms and go through security screening apparatuses." (*See, e.g.*, ECF No. 33-3, ¶ 6, PageID #229.)

Defendant argues that Plaintiff offers only "boilerplate" declarations with "conclusory allegations" that fail to identify "a policy or practice that is common, much less one that is illegal" such that it would give rise to liability under FLSA. (ECF No. 37, PageID #299, 301–02.) First, Defendant argues that any allegation of a policy or practice of mandatory meal period security screenings fails because only Ms. Gorie alleges that she was required to go through security screening; none of the opt-in declarants allege the screenings were mandatory. (*Id.*, PageID #304.) Second, Defendant argues that any allegation of a policy or practice of uncompensated walking time from work areas to exterior breakrooms also fails because Plaintiff does not show that leaving the secured area was mandatory. (*Id.*, PageID #306.)

Plaintiff responds by arguing that she is not required to identify a common plan or policy because such a showing is only "one avenue" to conditional certification. (ECF No. 39, PageID #391.) But Plaintiff has not made any alternative showing that merits conditional certification. Rather, Plaintiff reiterates that her motion is based on Defendant's failure to compensate alleged class members for work performed during the unpaid meal period "as a result of Defendant's security procedures"—in

9

other words, that alleged class members suffered from the Defendant's "single, FLSA-violating policy" mandating pre-lunch security screenings. *O'Brien*, 575 F.3d at 585.

The crux of Plaintiff's argument is that, during the unpaid 30-minute meal period, warehouse workers were required to exit the secured area through a security screening before being "able to eat their meals." (ECF No. 39, PageID #390.) But the record reflects that warehouse workers were free to eat their meals within the secured area in internal breakrooms. (ECF No. 37-2, PageID #320.) For instance, the named plaintiff in *Thomas v. Amazon.com Services, Inc., et al.*, No. 1:19-cv-01696 (N.D. Ohio), testified that he occasionally spent his meal periods in the internal breakrooms without going through security. (ECF No. 37-3, PageID #342–43.) None of Plaintiff's opt-in declarants allege that these internal breakrooms were unavailable to them or that they were required to leave the secured area before eating their meals. (ECF No. 33-3.) In sum, the record reflects that it is the individual warehouse worker's choice whether to incur time during the unpaid meal period to proceed through the security screening and leave the secured area.

Accordingly, the Court agrees with Defendant that Plaintiff's definition of the class is unascertainable. (ECF No. 37, PageID #308–09.) Plaintiff limits the class to warehouse workers "who went through security screenings during 30-minute unpaid meal periods." (ECF No. 1, PageID #6.) Some warehouse workers may have gone through security screenings for every meal period, others, for no meal periods, and still others for only some meal periods. Without making a merits determination or weighing credibility of the evidence, the Court finds that Plaintiff's claims and the

10

claims of the other warehouse workers require an individualized analysis to determine whether a violation of the FLSA occurred. Because Defendant does not track or log which employees leave the secured area for meal periods, it is not possible to determine which warehouse workers fall within Plaintiff's alleged class. (ECF No. 37-2, PageID #321.) As a formal matter, this case arises from circumstances personal to the plaintiff and not from a generally applicable rule, policy, or practice. *See Murton v. Measurecomp, LLC*, No. 1:07-cv-3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008). Plaintiff has not carried her burden, light though it may be, of establishing that the plaintiffs are similarly situated.

## II. Auto-Deduct Policy

Plaintiff and all opt-in declarants make the identical assertion that Defendant "automatically deducted 30 minutes from [their] pay each day for a meal period despite the fact that [they] never received 30-minute meal periods." (ECF No. 33-2, ¶ 4, PageID #225, *see, e.g.*, ECF No. 33-3, ¶ 5, PageID #229.) Although Plaintiff does not include workers who had time automatically deducted from their pay in her definition of the collective (*see* ECF No. 1, ¶ 37, PageID #6), the Court briefly addresses the allegation out of an abundance of caution because Plaintiff's definition may include such a collective in the definition by implication.

Defendant declares that no such auto-deduct policy exists. (ECF No. 37-2, ¶¶ 5–6, PageID #320.) And the record contains nothing other than self-serving declarations to the contrary from Plaintiff and those who have filed opt-in notices. It contains no documentation suggesting that Amazon in fact has such a policy.

11

Whether or not an auto-deduct policy exists, however, Plaintiff fails to show how such a policy violates the FLSA. "An automatic meal deduction system is lawful under the FLSA." *White v. Baptist Mem'l HealthCare Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). Because Plaintiff has not established that the plaintiffs were required to perform work during the unpaid meal period, she cannot carry her burden of establishing that the plaintiffs are similarly situated based on any automatic deduction of the unpaid meal period.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for conditional certification. ([ECF No. 33](#).)

**SO ORDERED.**

Dated: September 22, 2021

                                                     J. Philip Calabrese
                                                     United States District Judge
                                                     Northern District of Ohio